857 F.2d 749
 8 U.S.P.Q.2d 1029, 8 U.S.P.Q.2d 1551
 Cleo D. MATHIS and Vico Products Manufacturing Co., Inc.,
Plaintiffs-Appellants,
v.
Bill SPEARS d/b/a Waterway Plastics and Waterway Plastics,
Inc., Philip E. Chalberg, Robert Weygand,
Hydrabaths, Hydro Air Industries, Inc.,
and Gerald Moreland,
Defendants/Cross-Appellants.
 Nos. 86-1574, 86-1575, 86-1591, 86-1608, 86-1611 and 86-1643.
 United States Court of Appeals, Federal Circuit.
 Sept. 6, 1988.
 
 William Bullinger, of Cushman, Darby and Cushman, Washington, D.C., argued, for plaintiffs-appellants.
 William H. Nieman, on brief, and James B. Bear, of Knobbe, Martens, Olson & Bear, Newport Beach, Cal., argued, for Hydro Air Industries and Gerald Moreland.
 Richard S. Koppel, of Koppel & Harris, Westlake Village, Cal., argued, for Bill Spears and Waterway Plastics.
 Leonard Tachner, Newport Beach, Cal., for Philip E. Chalberg, Robert Weygand and Hydrabaths, Inc.
 Before MARKEY, Chief Judge, RICH and NEWMAN, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Appeals and cross-appeals from a judgment of the United States District Court for the Central District of California (Pfaelzer, J.), setting the quantum of previously granted awards of attorney fees and expenses. Cleo D. Mathis and Vico Products Manufacturing Co., Inc. (Mathis) challenge the amount and bases of the awards. Bill Spears d/b/a Waterway Plastics, Waterway Plastics, Inc., Philip E. Chalberg, Robert Weygand, Hydrabaths, Hydro Air Industries, Inc., and Gerald Moreland (collectively Hydro) challenge the denial of prejudgment interest on the award. We remand that portion of the judgment denying Hydro's request for prejudgment interest to enable the district court to exercise its discretion on Hydro's request. We affirm the judgment in all other respects and impose a sanction.
 
 BACKGROUND
 
 2
 Mathis dragged the seven appellees into court in three suits, each filed against a different grouping of the appellees and each charging infringement of three United States utility patents, Nos. 3,890,655 ('655), 3,890,656 ('656), and 3,946,449 ('449), all entitled "Whirlpool Jet For Bathtubs," and Design Patent No. 244,462, entitled "Whirlpool Jet Nozzle For Bathtubs and the Like." The district court consolidated the actions.
 
 
 3
 During discovery, Hydro sought all Mathis documents showing sales of the claimed jets before November 24, 1975, the filing date of the design patent application. Mathis produced only nine invoices, none showing any invalidating activity. Obtaining, over Mathis' objection, a court order for access to Mathis' files, Hydro discovered 295 undisclosed invoices for jet sales predating November 24, 1975; two showing sales of the jet claimed in the design patent more than one year before its filing date; three showing sales of jets more than one year before the filing date of the '449 application.
 
 
 4
 With truth thus discovered, Mathis dedicated the design patent (but not the '449 patent) to the public and moved to withdraw it. The district court granted the motion but allowed Hydro to use evidence relating to the design patent to show unenforceability of the utility patents and to establish the case as exceptional under 35 U.S.C. Sec. 285.
 
 
 5
 Following an eight-day bench trial on patent validity and enforceability, the district court issued an opinion on February 20, 1986, Mathis v. Hydro Air Industries, Inc., 1 USPQ2d 1513 (1986), holding that all claims of the three utility patents were invalid under at least one of 35 U.S.C. Secs. 102, 103, and 112, and unenforceable for inequitable conduct.
 
 
 6
 The district court found, inter alia, that: 1) during prosecution of the '655 patent, Mathis knowingly failed to disclose prior art more pertinent than that before the patent examiner, and affirmatively, untruthfully asserted that Mathis' structure was nowhere found in the prior art, 1 USPQ2d at 1515-16; 2) during prosecution of the '656 patent, Mathis knowingly failed to disclose material prior art, including industry practice and a Mathis product sold more than one year before the filing date of the '656 application, 1 USPQ2d at 1517-18; 3) during prosecution of the '449 patent, Mathis failed to disclose common industry practice and that the subject matter of claim 1 of that patent had been in public use more than one year before the filing date of the '449 application, 1 USPQ2d at 1520.
 
 
 7
 Citing Mathis' inequitable conduct before the Patent and Trademark Office (PTO), its discovery abuses, its continuation of the suits on the utility patents when aware of prior art that "clearly rendered them invalid," and its misleading "simulation" at trial of a prior art device, 1 USPQ2d at 1520-23, 1529-30, the district court said Mathis' "course of conduct demonstrates a recklessness with regard to the truth, which justifies an award of attorneys' fees under the 'exceptional case' provision of 35 U.S.C. Sec. 285." 1 USPQ2d at 1523.
 
 
 8
 On March 21, 1986, the district court entered judgment. In the face of the irrefutable evidence of invalidity and unenforceability described above, and with not even a seeming semblance of a sense of shame, Mathis appealed.
 
 
 9
 This court affirmed in an unpublished opinion, perceiving no error in the determination of unenforceability, the finding of exceptional case, or the award of attorney fees, and deeming it unnecessary to reach the holdings of invalidity. Mathis v. Hydro Air Indus., Inc., 818 F.2d 874 (Fed.Cir.1987). Continuing to exhibit a vincible ignorance of reality and a persistent penchant for wasting judicial resources, Mathis filed a Petition for Rehearing in this court (denied March 11, 1987) and a Petition for Certiorari in the Supreme Court (denied, --- U.S. ----, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987)).
 
 Quantum of the Award
 
 10
 While Mathis' appeal from the March 21, 1986 judgment was pending in this court, the district court conducted proceedings to establish the quantum of attorney fees and expenses, and, on June 27, 1986, issued detailed findings and conclusions "Regarding the Reasonableness of Attorneys Fees Awarded ... Under 35 U.S.C. Section 285." 1 USPQ2d at 1530-1539. The court awarded attorney fees totalling $580,183.50 and expenses totalling $83,421.91, with post-judgment interest calculated from March 21, 1986, the date of the judgment by which Hydro became entitled to the fees. 1 USPQ2d at 1532, 1535, 1538. Judge Pfaelzer denied Hydro's request for pre-judgment interest, saying she lacked authority to grant that request. Id.
 
 
 11
 Mathis appealed the award, challenging each basis as improper and each amount as unreasonable. Hydro cross-appeals the denial of its request for prejudgment interest on the award.
 
 
 12
 Twelve days before oral argument in this appeal, Mathis' attorney withdrew. New counsel filed an appearance and argued the cause.[1]
 
 ISSUES
 
 13
 1. Whether any basis exists for reexamining the March 21, 1986 judgment and its affirmance by this court.
 
 
 14
 2. Whether the district court abused its discretion in setting the amount of the award.
 
 
 15
 3. Whether the district court erred in denying pre-judgment interest on the award.
 
 
 16
 4. Whether this consolidated appeal is frivolous.
 
 OPINION
 I. Introduction
 
 17
 This case illustrates the truism that abuses of the patent system and the judicial process are not limited to infringers. Blatantly misleading the PTO, Mathis obtained four patents it had to know were invalid. Mathis then wasted the resources of the trial and appellate courts and those of seven defendants in a charade in which Mathis attempted to employ the courts as handmaidens to its iniquity.[2]
 
 
 18
 Mathis' conduct can be outlined as follows:
 
 Before This Appeal
 
 19
 (1) Concealed from the PTO: pertinent prior art; a material industry practice; invalidating sales; an invalidating public use; and that discardable concrete pipes were known.
 
 
 20
 (2) Misleadingly told the PTO the claimed structure was nowhere in the prior art.
 
 
 21
 (3) Concealed 295 invoices, some evidencing invalidity.
 
 
 22
 (4) Disingenuously "explained" its discovery noncompliance.
 
 
 23
 (5) Submitted misleading evidence of tests.
 
 
 24
 (6) Prosecuted its suit, appeal, and petitions with full knowledge of all the foregoing.
 
 This Appeal
 
 25
 (7) Attempted a frivolous second shot at the original judgment.
 
 
 26
 (8) Without basis, disputed relevancy of withheld art.
 
 
 27
 (9) Blamed nondisclosure of withheld art on a deceased attorney.
 
 
 28
 (10) Complained that an "army" of searchers invaded its premises.
 
 
 29
 (11) Labeled the court's reasons "a complete mystery."
 
 
 30
 (12) Without basis, questioned the court's impartiality.
 
 
 31
 (13) Untruthfully asserted that Kerr guidelines were ignored.
 
 
 32
 (14) Without basis, objected to fees for untried defenses.
 
 
 33
 (15) Insinuated without basis that Hydro's attorneys raised rates because of a trial court remark.
 
 
 34
 (16) Objected to fees relating to the design patent, on the frivolous ground it had been dedicated.
 
 
 35
 (17) Accused Hydro of "inequitable conduct" solely because Hydro thoroughly researched "every conceivable issue."
 
 II. Law of the Case
 
 36
 Repeating the arguments made in its briefs and petition for rehearing in his 1986 appeal, and citing no basis whatever for doing so, Mathis devotes forty percent of its present brief to attacks on the original judgment awarding attorney fees and this court's affirmance of that judgment. Citing no facts or law requiring their reconsideration, Mathis merely says those judgments are "palpably wrong" and "clearly erroneous."
 
 
 37
 Mathis' unsupported and unsupportable cries of judicial bias and incompetence fail to show any error whatever in the earlier decisions, much less any "exceptional circumstances" that might permit reopening them. See United States v. Turtle Mountain Band of Chippewa Indians, 612 F.2d 517, 522, 222 Ct.Cl. 1 (1979). Mathis has had his day in court, a day undeserved, on the issues previously decided. Our earlier affirmance remains the law of the case. See, e.g., Gindes v. United States, 740 F.2d 947, 949-50 (Fed.Cir.), cert. denied, 469 U.S. 1074, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984); Turtle Mountain, 612 F.2d at 520-21.
 
 III. Quantum of the Award
 A. Introduction
 
 38
 Confusing (or obfuscating) the purpose of Section 285, Mathis attacks the award as though it is made to Hydro's attorneys. The purpose of Section 285 is to reimburse a party injured when forced to undergo an "exceptional" case.[3] As the Supreme Court said in Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (quoting Wicker v. Happock, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)):
 
 
 39
 The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.
 
 
 40
 In the present case, a wrong has been done. Mathis has severely injured Hydro, having forced it to defend, at monstrous expense, its right freely to compete, subjecting Hydro to a totally unwarranted suit and two unwarranted appeals. Provisions for increased damages under 35 U.S.C. Sec. 284[4] and attorney fees under 35 U.S.C. Sec. 285 are available as deterrents to blatant, blind, willful infringement of valid patents. The only deterrent to the equally improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents is Section 285. No award under Section 285 can fully compensate a defendant subjected to bad faith litigation, e.g., for loss of executives' time and missed business opportunities. Thus that defendant cannot be fully returned to "the situation he would have occupied if the wrong had not been committed." 422 U.S. at 418-19, 95 S.Ct. at 2372. In determining the compensatory quantum of an award under Section 285 in such an egregious case, therefore, courts should not be, and have not been, limited to ordinary reimbursement of only those amounts paid by the injured party for purely legal services of lawyers, or precluded from ordinary reimbursement of legitimate expenses defendant was unfairly forced to pay. See Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578, 220 USPQ 490, 493 (Fed.Cir.1983).
 
 
 41
 Moreover, when confronted with litigation brought in bad faith, a court's exercise of its inherent power to rectify, at least in part, the injustice done the defendant serves additionally to defend the court and the judicial process against abuse.
 
 
 42
 We do not, of course, here suggest that all successful defendants are entitled to attorney fees or to attorney fees and expenses. The requirement in Section 285 of establishing an "exceptional case" remains a formidable and adequate barrier to unwarranted awards. Similarly, Section 285's requirement that the fees awarded be "reasonable" is a safeguard against excessive reimbursement. Because of the variety of acts that may render a case "exceptional," we do not hold that all awards under Section 285 may or must include expenses, or expenses of any particular type or amount. The district court's inherent equitable power and informed discretion remain available in determining the level of exceptionality rising out of the offender's particular conduct, and in then determining, in light of that conduct, the compensatory quantum of the award, including the amount of attorney fees, what if any expenses shall be included, and the rate of prejudgment interest, if any, on the award.
 
 B. Standard of Review
 
 43
 The methodology of assessing a reasonable award under 35 U.S.C. Sec. 285 is within the discretion of the district court. Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068, 219 USPQ 670, 678 (Fed.Cir.1983). To show that the district court abused its discretion, Mathis must convince us that the district court based its award on clearly erroneous factual findings, legal error, or a manifest error of judgment. PPG Indus., Inc. v. Celanese Polymer Specialities Co., 840 F.2d 1565, 1567, 6 USPQ2d 1010, 1013 (Fed.Cir.1988). Mathis makes not even a colorable showing of any basis for finding an abuse of discretion.
 
 
 44
 Though Mathis stresses that the district court adopted findings prepared by Hydro, that neither renders them improper nor relaxes our standard of review. Hydro drafted the findings after trial, at the district court's request, and Mathis fully exercised its opportunity to object to them. Once adopted, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Under Sea Indus., Inc. v. Dacor Corp., 833 F.2d 1551, 1556, 4 USPQ2d 1772, 1775 (Fed.Cir.1987). The findings here are not clearly erroneous.
 
 C. Attorney Fees
 1. Law
 
 45
 In an attempt at creative nonsense, Mathis accuses the district court of abuse of discretion because it did not award Hydro less than the amount asked, charges Hydro with "inequitable conduct" because it "researched every conceivable issue," and points to denials of some of Hydro's motions, saying the court should have "balanced" those "facts." The argument simply ignores the district court's finding that "[t]he amount of work that was done [by Hydro's attorneys] was absolutely necessary." 1 USPQ2d at 1531, 1534, 1537. Where, as here, a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation...." Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).
 
 
 46
 Citing Central Soya, Mathis says, incredibly, that this court requires that only prevailing patent owners be made whole with an award of all fees and expenses, and that Hydro is not entitled to such an award because it was accused of willful infringement. That argument ignores the language of Section 285, which authorizes an award "to the prevailing party " (emphasis added), whether patentee or accused infringer. See S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.Code Cong.Serv. 1386, 1387 (predecessor to Section 285 "made general so as to enable the court to prevent a gross injustice to an alleged infringer ") (emphasis added). That argument also ignores the language in the case Mathis cites. In Central Soya this court said the "purpose of Sec. 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." 723 F.2d at 1578, 220 USPQ at 493 (emphasis added).
 
 
 47
 Mathis exalts form over substance in saying the district court "ignored" Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), and its guidelines for attorney fee awards. That the district court did not specifically mention Kerr is irrelevant. In reaching its findings and conclusions the court followed the same guidelines as they are set forth by the Supreme Court in Hensley, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3. The court committed no legal error and correctly found the requested fees reasonable.
 
 2. Documentation
 
 48
 Continuing its reckless disregard for truth, Mathis says the district court "granted each of the defendants all of their individual attorney fees and all litigation expenses without proper documentation enabling an evaluation as to 'reasonableness.' " The record reflects, as the court found, Hydro's "complete documentation relating to the amount of fees incurred in connection with the patent issues of this litigation, including invoices, time entries, and summaries detailing the time expended, billing rates, and disbursements incurred," 1 USPQ2d at 1530, 1533, 1536, and that "there was no duplication of effort," id. at 1531, 1534, 1537. It wastes the time of all concerned when an appellant misstates the record and cites only its mere disagreement with findings as support for its burden of showing them clearly erroneous. See Anderson, 470 U.S. at 574, 105 S.Ct. at 1512; Fed.R.Civ.P. 52(a).
 
 3. Hourly Rates
 
 49
 Again pointing to no evidence in the record, Mathis labels "inconclusive" American Patent Law Association (APLA) surveys for 1981 and 1983, and an American Intellectual Property Law Association (AIPLA) 1985 survey of Los Angeles-area patent-lawyer billing rates to which the district court referred in assessing the reasonableness of rates charged Hydro. See 1 USPQ2d at 1530-31, 1533-34, 1536. As the law makes clear, the district court properly considered the surveys. See Hensley, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3 (customary fee a factor to guide determination of "reasonable attorney's fee"); Lam, 718 F.2d at 1069, 219 USPQ at 678 (no abuse of discretion in fee award where record contained documentation in support of billing rates).
 
 
 50
 Continuing to fantasize, Mathis says the district court erred because "reasonableness was established by averaging the attorney rates charged by the defendants on the basis of the total hours and looking at the average rate and considering it reasonable." The district court did no such thing. It made detailed findings on the hourly rates charged by each of the defendants' attorneys at different times during the litigation, and concluded that the rates generally corresponded to those presented in the APLA/AIPLA surveys and were reasonable in view of those surveys. 1 USPQ2d at 1531, 1534, 1536. Those findings are fully adequate, supported in the record, and not clearly erroneous.
 
 
 51
 Substituting insinuation and conjecture for evidence, Mathis says Hydro's attorneys raised their rates because of "the trial court's gratutious [sic] remarks concerning the fact that she was going to award attorney's fees before trial." That fair warning was a favor to Mathis; it was certainly not an abuse of discretion.[5]
 
 4. Defenses Not Tried
 
 52
 Saying the district court erred by including fees relating to patent misuse issues that were not tried, Mathis does not say why one sued for infringement should not investigate that defense. Nor does Mathis recognize the legal effect of the excellent defensive results Hydro obtained. When a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley, 461 U.S. at 435, 103 S.Ct. at 1940 (emphasis added). The district court did not abuse its discretion when it included fees for issues not tried.
 
 5. Attorney Fees Motions
 
 53
 Objecting to fees for preparation of Hydro's motions for attorney fees, Mathis says, untruthfully, that the claim "was submitted on the basis of estimates and no documentation was submitted" until after the award was made. Though Hydro initially submitted estimates, the district court did not make its award until after Hydro had submitted full documentation. No fees were awarded on the basis of estimates.
 
 
 54
 Mathis points to no record evidence that the rate actually charged for preparation of the motions was excessive. See Chromalloy Am. Corp. v. Alloy Surfaces Co., 353 F.Supp. 429, 431, 176 USPQ 508, 510 (D.Del.1973) ("Only if the evidence reveals that the rate actually charged is abnormally high or abnormally low will the Court base an attorney fee award on an hourly rate at variance with the bill for legal services that was actually rendered to the client.")
 
 6. Design Patent
 
 55
 Continuing to ignore facts, Mathis objects to fees for work relating to the design patent, saying "[t]he defendants prevailed on this issue because of the dedication of the design patent [to the public], not because of any proofs." One ignored fact is that Mathis' dedication occurred only after Hydro found the invalidating invoices Mathis tried to conceal. Another is that Mathis' own conduct forced Hydro to incur fees for what Mathis describes as the "army of document searchers" that "invaded" its premises. Another is that an award under Section 285 is not limited to fees paid for counsel's work at trial. The fees Hydro incurred in discovery, as everywhere else in this litigation, were necessary to the outcome of the case and were properly included in the award. See PPG Indus., 840 F.2d at 1568-69, 6 USPQ2d at 1013-14 (prevailing defendant entitled to fees for participation in PTO proceedings undertaken after defendant discovered invalidating prior art known to patentee, as PTO proceedings substituted for district court litigation).
 
 7. Expenses
 
 56
 a. In General
 
 
 57
 In Central Soya this court affirmed an award of expenses as properly within the scope of Section 285, saying "[w]e interpret attorney fees [under 35 U.S.C. Sec. 285] to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." 723 F.2d at 1578, 220 USPQ at 493.
 
 
 58
 Mathis says all recovery of expenses was waived because they were not presented separately in a bill of costs and are governed by Fed.R.Civ.P. 54(d),[6] 28 U.S.C. Sec. 1920,[7] and 28 U.S.C. Sec. 1821.[8] In strenuously debating the question of whether a statutorily authorized award of attorney fees may include "costs" not set forth in Section 1920 and witness fees greater than those set forth in Section 1821, the parties misperceive the nature of this case. Unlike the normal case characterized by an honest search for the light of truth, this case was initiated and conducted by a party which, from the filing of the first application in the PTO through this consolidated appeal, has dwelt in the darkness of deceit and distortion.
 
 
 59
 The cited Rule and statutes relate to good faith proceedings, i.e., to court resolutions of controversies about which reasonable persons may disagree. In such expectably more common cases, the "American Rule" is that each party bears its own attorney fees and expenses. Hall v. Cole, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973). Rule 54(d) modifies slightly the American Rule in such routine-type cases in providing for reimbursement of the winner for the relatively low "costs" set forth in Section 1920. Similarly, Section 1821 sets a witness attendance fee of $30 a day in such cases. Though courts have not been unanimous in approving or refusing awards of costs as part of an attorney fee award in such routine, good faith cases,[9] nothing in the Rule or statutes impedes or precludes a district court from exercising its inherent equitable power to make whole a party injured by an egregious abuse of the judicial process. See Hall, 412 U.S. at 5, 93 S.Ct. at 1946. Though courts have exercised that inherent power in the absence of express statutory authorization, see Kinnear-Weed Corp. v. Humble Oil & Refining Co., 441 F.2d 631, 636-37 (5th Cir.), cert. denied, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971), Congress has not been unaware of the distinction between good faith litigation to which the American Rule applies and bad faith litigation to which it does not.
 
 
 60
 Congress enacted Section 285 to codify in patent cases the "bad faith" equitable exception to the American Rule. Rohm & Haas Co. v. Crystal Chem. Co., 736 F.2d 688, 690, 222 USPQ 97, 98 (Fed.Cir.1984). In Section 285, as above indicated, Congress authorized awards of attorney fees to prevailing defendants "to enable the court to prevent a gross injustice to an alleged infringer." S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.Code Cong.Serv. 1386, 1387 (emphasis added); see generally Rohm & Haas, 736 F.2d at 690-92, 222 USPQ at 98-100. Recognizing the good faith/bad faith distinction, Congress expressly limited such awards to "exceptional cases"
 
 
 61
 to discourage conduct which fell within the scope of "exceptional," by requiring the party acting exceptionally to bear the expenses of the opposing party. It would be inconsistent with the intent of Sec. 285 to limit the prevailing party to something less.
 
 
 62
 Central Soya, 723 F.2d at 1578, 220 USPQ at 493 (citation omitted).
 
 
 63
 Similarly, we conclude in this case that it would be inconsistent with the intent of Section 285 to limit prevailing-party Hydro to something less than the fees and expenses to which it was subjected by Mathis in this "very exceptional" case of "gross injustice," and that Fed.R.Civ.P. 54(d) and 28 U.S.C. Secs. 1920 and 1821 are not here applicable.
 
 
 64
 b. Expert Witness Fees
 
 
 65
 The award of expenses included $45,000 paid to an expert witness. Mathis objects to that amount, arguing that Crawford Fitting Co. v. J.T. Gibbons, Inc., 479 U.S. 1080, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), precludes recovery of expert witness fees beyond the $30-per-day amount specified in 28 U.S.C. Sec. 1821(b). Crawford, however, confirms the above-stated view that Sections 1920 and 1821 are here inapplicable, for in Crawford the Supreme Court held only that Fed.R.Civ.P. 54(d) does not grant federal courts discretion to award witness fees beyond the limitations of 28 U.S.C. Secs. 1920 and 1821 in a routine, nonexceptional case, for which Congress had made no special provision. It did not reach the question of whether awards of attorney fees under statutes specifically providing for such awards may include witness fees beyond the limits of Sections 1920 and 1821. See 107 S.Ct. at 2499 (Blackmun, J., concurring "upon the understanding that [the Court] does not reach the question whether, under 42 U.S.C. Sec. 1988, a district court may award fees for an expert witness"), 107 S.Ct. at 2500 n. 1 (Marshall, J., dissenting) ("I do not understand today's decision to decide the question whether a district court may award expert witness fees under 42 U.S.C. Sec. 1988.")[10]
 
 
 66
 Courts have concluded that 28 U.S.C. Sec. 1821 does not limit the amount of expert witness fees included in awards of attorney fees, even in the absence of a statute requiring a finding of bad faith or other egregious conduct making a case "exceptional." See Heiar v. Crawford County, Wis., 746 F.2d 1190, 1203 (7th Cir.1984) (expert witness fees part of reasonable attorney fees under 42 U.S.C. Sec. 1988), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir.1983) (reasonable expert witness fees reimbursable under 42 U.S.C. Sec. 1988).
 
 
 67
 Courts have distinguished good faith from bad faith litigation in the specific context of the relationship of Section 1821 to expert witness fees. In International Woodworkers of America v. Champion International Corp., 790 F.2d 1174, 1180 (5th Cir.1986) (en banc ), the court held that a statute authorizing attorney fees but failing to address expert witness fees will not authorize fees beyond the Section 1821 amount, but noted that full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith. Id. at 1177 & n. 2 (citing Kinnear-Weed Corp., 441 F.2d at 636-37). See also Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d 201, 205 (3d Cir.1981) ("[E]xpert fees may be awarded if the losing party has conducted the case in a vexatious or oppressive manner.").
 
 
 68
 It follows that under Section 285, which authorizes an award of fees only upon a finding of "exceptional case," a district court may, in the exercise of its discretion and inherent equity power, in a proper case, include an award of reasonable expert witness fees in excess of the $30/day attendance fee specified in 28 U.S.C. Sec. 1821.[11]
 
 
 69
 Here, the district court carefully made two important and necessary findings: "the use of an expert witness in this case was a necessity, and the expert fees are reasonable in view of the scope of this litigation." 1 USPQ2d at 1531, 1534, 1536. Mathis has not shown those findings to be clearly erroneous and has shown no abuse of discretion. The district court properly awarded the expert witness fees incurred in this exceptional case of vexatious and unwarranted litigation.
 
 
 70
 c. Lodging Expenses
 
 
 71
 Mathis objects to the award of lodging expenses of Hydro's attorneys. The district court found:
 
 
 72
 Each of the multiple defendants were represented by separate counsel and thus, substantial coordination efforts were required.... Where there are multiple consolidated cases involving different parties, coordination among the parties' counsel is a necessity. The expenditures by defendants' counsel are completely reasonable under the circumstances.
 
 
 73
 1 USPQ2d at 1531, 1534, 1536-37. Mathis, who elected to sue seven defendants and thus created the need for coordination, has not shown the finding that lodging expenses were reasonable to be clearly erroneous, nor has Mathis shown any reason why it should not be required to reimburse Hydro for those expenses incurred in this exceptionally egregious case.
 
 
 74
 d. Overhead Expenses
 
 
 75
 Mathis objects that the award includes what Mathis says are "overhead clerical services," such as paralegal work, secretarial services, overtime, document preparation and outside typing services. Mathis suggests that Hydro got a double recovery for such items because they would have been included in Hydro's hourly rates. Mathis does not, however, refute Hydro's statement that the listed items "were charged only when the volume of work relating to the litigation exceeded the normal secretarial workday, resulting in an out-of-pocket cost above and beyond normal office salaries." The district court found that Hydro's disbursements, including paralegal and law clerk time, were reasonable. 1 USPQ2d at 1531, 1534, 1536. We have no reason to disturb that finding.
 
 IV. Post-Judgment Interest
 
 76
 Mathis' brief objects to the award of post-judgment interest from the date of the district court's original judgment, March 21, 1986. Hydro was adjudged entitled to an award under Section 285 on that date, with the amount yet to be determined. Mathis says post-judgment interest should not begin to accrue until the amount is fixed, which Mathis says will be when this court rules in this consolidated appeal.
 
 
 77
 At oral argument, Mathis' new counsel objected to any post-judgment interest, because Section 285 does not provide for it.
 
 
 78
 The district court awarded post-judgment interest under 28 U.S.C. Sec. 1961, not 35 U.S.C. Sec. 285. Section 1961 provides, in relevant part:
 
 Interest
 
 79
 (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment.... [Emphasis added.]
 
 
 80
 "Any judgment" in Section 1961 includes a judgment awarding attorney fees. E.g., Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542, 544 (5th Cir.1983) (en banc ) (attorney fee award under 15 U.S.C. Sec. 15); Spain v. Mountanos, 690 F.2d 742, 747-48 (9th Cir.1982) (attorney fee award under 42 U.S.C. Sec. 1988).
 
 
 81
 The provision for calculating interest from entry of judgment deters use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor. Interest on an attorney fee award thus runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum. Copper Liquor, 701 F.2d at 544-45.
 
 
 82
 The district court's award of post-judgment interest was proper.
 
 V. Prejudgment Interest
 
 83
 In its consolidated cross-appeal, Hydro argues that the purpose of awarding attorney fees under 35 U.S.C. Sec. 285, like that of awarding damages for infringement under 35 U.S.C. Sec. 284, is to compensate the injured party. In light of that purpose, prevailing patent owners ordinarily receive prejudgment interest on damages awarded under Section 284. General Motors Corp. v. Devex Corp., 461 U.S. 648, 657, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211, 217 USPQ 1185, 1189 (1983); Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967, 1 USPQ2d 1191, 1193 (Fed.Cir.1986); cert. denied, --- U.S. ----, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987). It follows, says Hydro, that defendants awarded attorney fees under Section 285 should also receive prejudgment interest. That argument would support prejudgment interest on all attorney fee awards to all prevailing defendants in all exceptional cases and is thus unnecessarily broad. Whatever the wisdom or logic of such a rule, it is not necessary to go that far in disposing of the present cross-appeal.
 
 
 84
 Seizing on the district court's indication that it believed it lacked authority to award prejudgment interest on the award, 1 USPQ2d at 1532, 1535, 1538, Mathis supports that view with a notation that, unlike Section 284, Section 285 contains no express authorization to award interest. Mathis' position would preclude prejudgment interest on all attorney fee awards to all prevailing defendants in all exceptional cases and is thus unnecessarily restrictive.
 
 
 85
 In the present case, the district court's authority lies not in a statute but in its inherent equitable power. In Devex, the Supreme Court, in dealing with Section 284, discussed the common law standard set forth in Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274, 29 USPQ 306 (1936), saying:
 
 
 86
 Under the Duplate standard, prejudgment interest was generally awarded from the date on which damages were liquidated, and could be awarded from the date of infringement in the absence of liquidation only in "exceptional circumstances," such as bad faith on the part of the infringer.
 
 
 87
 461 U.S. at 651-52, 103 S.Ct. at 2060, 217 USPQ at 1186-87 (emphasis added), and:
 
 
 88
 We have little doubt that Sec. 284 does not incorporate the Duplate standard. Under that standard, which evolved as a matter of federal common law, prejudgment interest could not be awarded where damages were unliquidated, absent bad faith or other exceptional circumstances.
 
 
 89
 461 U.S. at 653, 103 S.Ct. at 2061, 217 USPQ at 1187 (emphasis added).
 
 
 90
 The Court went on to point out that Section 284 did not limit a court's interest-awarding authority to exceptional circumstances, adding "and there is no warrant for imposing such a limitation." Id. Thus, under Section 284, a court's common law authority to award interest on unliquidated damages in exceptional cases had added to it a statutory authority to award interest in nonexceptional cases. That Section 284 removed the requirement for bad faith or other exceptional circumstances in infringement cases left the court's common law authority untouched, intact, and available for use in other cases.
 
 
 91
 Thus, in Duplate, the Court recognized that a court did have authority to award prejudgment interest on unliquidated damages where, as here, there was "bad faith or other exceptional circumstances." Id.; see Duplate, 298 U.S. at 459, 56 S.Ct. at 797, 29 USPQ at 311; see also Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc., 609 F.Supp. 1325, 1327-28 (E.D.Pa.1985) (applying Duplate standard in a copyright case), aff'd, 797 F.2d 1222 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). That the Court in Duplate was dealing with damages for infringement and the present case involves "damages" owed Hydro for the injury done it by Mathis[12] does not affect the common law authority to avoid injustice that is commonly called a court's "inherent equity power." It can hardly be said that a court's inherent power is exercisable to avoid gross injustice to one side but not to the other, or when bad faith is exhibited by one side but not when bad faith is exhibited by the other.
 
 
 92
 Thus we hold that a district court does have authority, in cases of "bad faith or other exceptional circumstances," to award prejudgment interest on the unliquidated sum of an award made under Section 285.
 
 
 93
 We do not, of course, hold that prejudgment interest must be awarded on the Section 285 award to Hydro in this case. That the court has a common law authority to exercise its inherent equitable power does not mean it must do so. The matter must be decided on remand by the district court in the first instance, exercising its discretion in light of all the facts and circumstances.
 
 VI. Frivolous Appeal
 
 94
 Analysis of most of Mathis' contentions compels the conclusion that those contentions lack even a minimally arguable basis and that this consolidated appeal is in major part frivolous. Based as it is on record distortions, manufactured facts, and implausible and unsupportable legal arguments,[13] all of Mathis' appeal except that relating to expenses "wastes the time of the court and of opposing counsel, and imposes unnecessary costs on the parties and on fellow citizens whose taxes support this court and its staff." Chemical Eng'g Corp. v. Marlo, Inc., 754 F.2d 331, 335, 222 USPQ 738, 741 (Fed.Cir.1984). Hydro is entitled to the costs and attorney fees it incurred in resisting the frivolous portion of Mathis' consolidated appeal. See Porter v. Farmers Supply Serv., Inc., 790 F.2d 882, 887, 229 USPQ 814, 817-18 (Fed.Cir.1986); Asberry v. United States Postal Serv., 692 F.2d 1378, 1382, 215 USPQ 921, 921 (Fed.Cir.1982); Fed.R.App.P. 38.
 
 
 95
 Though Mathis' treatment of expenses in its briefs is frivolous in part, Mathis' new counsel presented at least a plausible argument respecting expenses. Hydro is not, therefore, entitled to reimbursement of costs and fees expended in responding to Mathis' objection to the expenses portion of the award.
 
 CONCLUSION
 
 96
 The judgment appealed from by Mathis is affirmed in all respects.
 
 
 97
 The case is remanded to enable the district court to grant or deny Hydro's request for prejudgment interest on the award.
 
 SANCTION
 
 98
 In accord with Fed.R.App.P. 38, Mathis shall pay to Hydro the costs and attorney fees incurred by Hydro in connection with the frivolous portion of Mathis' consolidated appeal.
 
 COSTS
 
 99
 Each party shall pay its own costs and attorney fees incurred in relation to that part of Mathis' consolidated appeal concerned with the award of expenses. Mathis shall pay to Hydro the costs, but not the attorney fees, incurred by Hydro in relation to its consolidated cross-appeal.
 
 
 100
 AFFIRMED IN PART, REMANDED IN PART.
 
 
 101
 NEWMAN, Circuit Judge, concurring in part, dissenting in part.
 
 
 102
 I concur in the court's decision with the exception of the imposition of sanctions on this appeal.
 
 
 103
 Included in the "attorney fee" calculation, the district court awarded the defendants their expert witness fees. Expert witness fees are not "attorney fees", although they may be reasonably necessary to the conduct of the defense. However, I agree with this court's interpretation that because 35 U.S.C. Sec. 285 can be invoked only in an "exceptional case", one in which bad faith or disregard of law has been shown, recovery of expert witness fees is not necessarily excluded. Mathis has not shown that the district court abused its discretion in awarding the defendants their full expert witness fees, and I join the court's affirmance of that award.
 
 
 104
 I also agree with the court that there was fair basis for Mathis raising this question on appeal, particularly in view of Crawford Fitting Co. v. J.T. Gibbons, Inc., 479 U.S. 1080, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), wherein the Court held in a FELA action that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of Sec. 1821, absent contract or explicit statutory authority to the contrary". The application to section 285 fee awards of the principles discussed in Crawford Fitting had not previously been considered.
 
 
 105
 In view of the absence of direct precedent, and the substantial sum involved, I believe that this issue alone justified the taking of this appeal. Although Mathis in his brief did reargue the merits, his abandoned attempt to reopen an issue already decided is not so egregious, or unusual, as to require sanction. (I note that the appellee responded merely by invoking the doctrine of the law of the case.) The record on this appeal does not enable my independent review of the appellant's "iniquity" at trial of the merits, despite the catalog thereof in the majority opinion, but that iniquity presumably led to the award of attorney fees under section 285, a matter that has already been affirmed on appeal. Mathis v. Hydro Air Industries, Inc., 818 F.2d 874 (Fed.Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). In my view the imposition of sanctions for raising certain issues on appeal, while accepting that other issues are properly raised, is unwarranted. Thus I respectfully dissent from that aspect of the court's opinion.
 
 
 
 [1]
 Substituted counsel is not responsible, of course, for the frivolousness of filing this appeal or for the many improprieties in Mathis' briefs. Indeed, substitute counsel exhibited the candor expected of members of the bar of this court when in oral argument he disavowed derogatory remarks toward this court and the district court, challenges to the district court's findings of fact, and arguments directed to the law of the case issue. By that time, of course, Hydro had been required to respond to Mathis' brief, and this court had been required to devote its judicial and staff resources to the full panoply of pre-hearing procedures
 
 
 [2]
 Hydro's antitrust and patent misuse claims were set aside for later trial. See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965)
 
 
 [3]
 35 U.S.C. Sec. 285 (1982) provides:
 The court in exceptional cases may award reasonable attorney fees to the prevailing party.
 
 
 [4]
 35 U.S.C. Sec. 284 (1982) provides:
 Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
 When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.
 The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.
 
 
 [5]
 The court's remark makes it all the more difficult to understand Mathis' continuation of the suits and the appeal and petitions to this and the Supreme Court, leaving harassment of competitors as the only apparent (and reprehensible) purpose to be served
 
 
 [6]
 Fed.R.Civ.P. 54(d) reads, in relevant part:
 Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs * * *.
 
 
 [7]
 28 U.S.C. Sec. 1920 reads:
 Taxation of costs
 A judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
 A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
 
 
 [8]
 28 U.S.C. Sec. 1821 reads, in relevant part:
 Per diem and mileage generally; subsistence
 (a)(1) Except as otherwise provided, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
 * * *
 (b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.
 
 
 [9]
 Compare Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir.1986); Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1188-89 (11th Cir.1983); Bennett v. Central Tel. Co. of Ill., 619 F.Supp. 640, 643 n. 1 (N.D.Ill.1985) with Bennett v. Department of the Navy, 699 F.2d 1140, 1143 (Fed.Cir.1983); Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 224 (9th Cir.), cert. denied, 379 U.S. 880 (1964); Machinery Corp. of Am. v. Gullfiber AB, 225 USPQ 743, 746 n. 7 (E.D.Pa.1984), vacated on other grounds, 774 F.2d 467, 227 USPQ 368 (Fed.Cir.1985); see generally Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 589-96 (1984)
 
 
 [10]
 42 U.S.C. Sec. 1988 (1982) reads in pertinent part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [11]
 District court decisions interpretable as holding to the contrary are not, of course, precedent in this court. See, e.g., Machinery Corp., 225 USPQ at 746; Stickle v. Heublein, Inc., 590 F.Supp. 630, 640, 224 USPQ 910, 917 (W.D.Wis.1984); U.S. Indus., Inc. v. Norton Co., 578 F.Supp. 1561, 1568, 223 USPQ 779, 783 (N.D.N.Y.1984)
 
 
 [12]
 Not every prevailing defendant, even in "exceptional" cases, can be said to have been injured or "damaged" by the filing and prosecution of the litigation. The role of defendant has become commonplace and expected in the business world. Litigation initiated in good faith may acquire an "exceptional" caste as it progresses. On the other hand, where, as here, the ostensible basis for suit was acquired through inequitable conduct and the litigation was conducted in bad faith from beginning to end, the defendant was, clearly and without even colorable warrant, injured. The "damages" caused by that injury obviously include the attorney fees and expenses the defendant was forced to pay
 
 
 [13]
 That Mathis found it necessary to distort the record and the actions of the district court, and to present non sequiturs as legal arguments, should have told it that its appeal was frivolous