**FOX INDUSTRIES, INC., Plaintiff–Appellant,**

v.

**STRUCTURAL PRESERVATION SYSTEMS, INC., Defendant–Appellee.**

Nos. 89–1353, 90–1304.

United States Court of Appeals, Federal Circuit.

Dec. 19, 1990.

Rehearing Denied in No. 89–1353 Jan. 14, 1991.

---

802

William D. Hall, Potomac, Md., argued for plaintiff-appellant.

Larry S. Nixon, Nixon & Vanderyhye, P.C., Arlington, Va., argued for defendant-appellee. With him on the brief was James T. Hosmer.

Before NIES, Chief Judge, and SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

In 1983, appellant Fox Industries, Inc. (Fox), filed a complaint in the United States District Court for the District of Maryland. Appellant accused appellee Structural Preservation Systems, Inc. (SPS) of infringing U.S. Patent No. 4,019,301 (the '301 patent). The '301 patent covers fiberglass encasements which protect concrete bridge piles from water erosion.

After a two-week trial, the district court refused to enforce any of the '301 patent's claims due to appellant's inequitable con-

duct before the Patent and Trademark Office (PTO). *See Fox Indus. Inc. v. Structural Preservation Sys. Inc.,* 6 USPQ2d 1577, 1988 WL 18937 (D.Md.1988). The Maryland District Court further found that SPS had not infringed the '301 patent. The trial court also determined that appellant had misused the patent. In response to SPS's motion, the district court ordered appellant to pay more than $160,000.00 in attorney fees and costs. *See Fox Indus. Inc. v. Structural Preservation Sys. Inc.,* 1990 WL 27880 (D.Md.). Fox appeals both the judgment and the fee award. This court affirms.

## BACKGROUND

Appellant's principal, Douglas Fox, invented the '301 patented subject matter. The prosecution history of the '301 patent includes an original application filed April 27, 1971 and three continuing applications filed March 1973, July 1974, and October 1975. Walter Finch, the attorney who filed the 1971 and 1973 applications left appellant's employ in 1974. Appellant retained new patent counsel, Edward Levy, to continue the prosecution. During prosecution of the '301 predecessor applications, appellant amended claims to describe the flexibility of the fiberglass jacket. Finch admitted during trial that the original 1971 application did not disclose jacket flexibility. This characteristic, therefore, constituted new matter. The PTO eventually rejected all claims in the 1971 and 1973 applications. The district court concluded that the earliest filing date for the invention as claimed was March 5, 1973.

More than one year prior to the March 5, 1973 filing date Douglas Fox published a sales brochure entitled FX–70 Structural Fiberglass System (June 1971) (brochure). Finch used this brochure as source material in drafting the 1973 application. The district court found that the brochure teaches every feature specified in the claims of the '301 patent except one limitation in claim 10. The court further found that the brochure was more relevant than any other single reference cited during prosecution. Appellant did not disclose the brochure to the PTO during prosecution of the four applications leading to the '301 patent.

## DISCUSSION

### Inequitable Conduct

This court reviews inequitable conduct under an abuse of discretion standard. *Kingsdown Medical Consultants Ltd. v. Hollister Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988). The district court did not abuse its discretion in finding inequitable conduct. A party may show inequitable conduct by producing clear and convincing evidence of: (1) material prior art; (2) knowledge chargeable to the patent applicant of prior art and its materiality; and (3) applicant's failure to disclose the prior art to the PTO with intent to mislead. *FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987). Information is material if a "substantial likelihood [exists] that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984); 37 C.F.R. § 1.56 (1983).

Appellant cites *Kimberly–Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1457, 223 USPQ 603, 616 (Fed.Cir.1984) for the proposition that this court determines materiality and intent only on the basis of allowed claims. Appellant argues that Finch, who drafted claims which the PTO rejected, alone intended to mislead. Therefore, according to appellant, because the inequitable conduct pertains only to rejected claims, the trial court may enforce the '301 patent's claims. This court disagrees. Appellant excerpts too little and makes too much of the statement in *Kimberly–Clark.* In that case the non-disclosed prior art was not material to the allowed claims. Such is not the case here.

The duty of candor extends throughout the patent's entire prosecution history. In determining inequitable conduct, a trial court may look beyond the final claims to their antecedents. "Claims are not born, and do not live, in isolation.

Each is related to other claims, to the specification and drawings ... [and] to earlier or later versions of itself in light of amendments made to it." *Kingsdown*, 863 F.2d at 874, 9 USPQ2d at 1390 (footnote omitted). Therefore, a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.

■ The record supports the trial court's findings that Finch knew that the FX–70 brochure was material and withheld it from the PTO with intent to deceive. Finch had an obligation to disclose the brochure to the PTO notwithstanding the fact that none of the claims issued in the form in which he drafted them. A fortuitous rejection does not cure a breach of the duty of candor. *Driscoll v. Cebalo*, 731 F.2d 878, 885, 221 USPQ 745, 751 (Fed.Cir.1984). Nothing in *Kimberly–Clark* requires the contrary.

■ Moreover, the brochure discloses the entirety of the structure set forth in most of the issued claims. The trial court held eight of the twelve claims of the '301 patent invalid under 35 U.S.C. § 102(b) in light of the brochure. A finding that a withheld reference anticipates a claim in a patent satisfies the most stringent standard of materiality. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1214, 2 USPQ2d 2015, 2019 (Fed.Cir.1987).

■ Appellant also argues that Rule 56 does not govern Finch's duty of candor because the rule was promulgated after his involvement with the applications ceased. This argument lacks merit. In 1977, the PTO clarified that Rule 56 merely "codifie[d] the existing Office policy on fraud and inequitable conduct, which is believed consistent with the prevailing case law in the federal courts." 42 Fed.Reg. 5,588, 5,589 (Jan. 28, 1977). *See also, In re Jerabek*, 789 F.2d 886, 890 n. 10, 229 USPQ 530, 533 n. 10 (Fed.Cir.1986). In any event, the prevailing 1971–74 standards of inequitable conduct would have required disclosure of the FX–70 brochure. *See Norton v. Curtiss*, 433 F.2d 779, 792–97, 57 CCPA 1384, 167 USPQ 532, 542–47 (1970).

■ Fox himself owed the same duty of candor to the PTO as did Finch. Fox participated in the prosecution from the original 1971 application through the successful 1975 application. Throughout this period, Fox, the author of the brochure, knew of this extremely material document. The duty of candor rests on "the inventor ... and on every other individual who is substantively involved in the preparation or prosecution of the application...." 37 C.F.R. § 1.56(a). The trial court determined that appellant, with intent to mislead, withheld the brochure. Finch's testimony fully supports this finding.

Nothing in the record convinces us that the trial court's findings are clearly erroneous. The record contains no evidence of good faith. Further, this court detects no abuse of discretion in the district court's balance of materiality and intent in concluding appellant breached its duty of candor.

### Attorney Fees

■ Under 35 U.S.C. § 285 (1986), the trial court awarded attorney fees to appellee. Section 285 provides that the "court in exceptional circumstances may award reasonable attorney fees to the prevailing party." Inequitable conduct during prosecution of a patent may render an infringement suit exceptional. *See Mathis v. Spears*, 857 F.2d 749, 8 USPQ2d 1551 (Fed. Cir.1988). In light of appellant's conduct in procurement of the '301 patent, this court finds no abuse of discretion in the trial court's assessment of attorney fees. Moreover the district court correctly calculated post-judgment interest from the date of the judgment establishing the right to the award. *See id.* at 760, 8 USPQ2d at 1559–60.

### CONCLUSION

Because the '301 patent is unenforceable, this court need not address Fox's infringement contentions. Further, in light of the inequitable conduct, this court need not reach the district court's misuse conclusion. The Maryland District Court correctly ap-

plied the patent statute and appropriately assessed attorney fees and costs. Therefore, the district court's judgment is

AFFIRMED.